ORIGINAL

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 07/14/06

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

――――――――――――――――――――x
IN RE AUTHENTIDATE :
HOLDING CORP. :
SECURITIES LITIGATION : MASTER FILE
: 05 Civ. 5323 (LTS) (DFE)
This Document Relates To: :
All Actions :
――――――――――――――――――――x

## OPINION AND ORDER

Defendant Authentidate Holding Corporation and the individual Defendants in this securities litigation have brought a motion to dismiss lead Plaintiffs' Consolidated Amended Securities Class Action Complaint ("Complaint") pursuant to Rules 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act ("PSLRA.") Defendants principally argue that several of Plaintiffs' claims are time-barred, that Plaintiffs lack standing to bring a claim under Section 11 of the Securities Act, that Plaintiffs have failed sufficiently to plead loss causation as to their patent-related claims, that the Amended Complaint fails to plead facts demonstrating fraud as to each Defendant, and that Defendant Authentidate Holding Corp. ("Authentidate" or the "Company") did not misrepresent or omit to disclose a material fact. The Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1331.

For the reasons that follow, Plaintiffs' claims premised on the non-disclosure of the contract with the United States Postal Service, Plaintiffs' claims premised on the non-disclosure of any performance metrics or language regarding termination contained within that contract, and Plaintiffs' claims regarding non-disclosure of the Patent Office's rejection of Defendants' patent applications are dismissed with prejudice. All of Plaintiffs' remaining claims are dismissed without prejudice and with leave to replead.

## DISCUSSION

In deciding a motion brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss a complaint for failure to state a claim, "the court must accept as true all of the well pleaded facts and consider those facts in the light most favorable to the plaintiff." Hudson Valley Black Press v. Internal Revenue Serv., 307 F. Supp. 2d 543, 545 (S.D.N.Y. 2004). A complaint should not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). A court may consider, in deciding a motion to dismiss, documents that are integral to the complaint or are incorporated by reference in the pleadings. See Rizzo v. The MacManus Group, Inc., 158 F. Supp. 2d 297, 301 (S.D.N.Y. 2001) (a court may consider "documents that are incorporated by reference in the pleadings" when deciding a motion to dismiss under Rule 12(b)(6)), and Sable v. Southmark/Envicon Capital Corp., 819 F. Supp. 324, 328 (S.D.N.Y. 1993) (in deciding a motion to dismiss, a court "may consider documents which form the basis of allegations of fraud if the documents are 'integral to the complaint.'") (internal citations omitted)).

In order to state a claim for securities fraud under Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 promulgated by the SEC thereunder (collectively, "Section 10(b)"), a plaintiff must demonstrate that "the defendant, in connection with the purchase or sale of securities, made a materially false statement or omitted a material fact, with scienter, and that the plaintiff's reliance on the defendant's action caused injury to the plaintiff." Ganino v. Citizens Utils. Co., 228 F.3d 154, 161 (2d Cir.2000).

Section 11 of the Securities Act of 1933 ("Section 11" and "Securities Act")

imposes civil liability on persons preparing materially misleading registration statements. To state a claim under Section 11, an injured plaintiff need allege only that a defendant made or participated in making a "material misstatement or omission" in a registration statement for a security the plaintiff acquired; liability for such misstatements extends to, among others, underwriters of securities and to anyone who consented to be "named as having prepared or certified [a] report or valuation which is used in connection with the registration statement." 15 U.S.C.A. § 77k(4), (5) (West 2006).

To state claims under Section 20(a) of the Exchange Act, 15 U.S.C. § 78(t)(a) (for control person liability as to Section 10(b) claims), and Section 15 of the Securities Act, 15 U.S.C. § 77o (for control person liability as to Section 11 claims), plaintiff must allege (i) a primary violation by a controlled person, and (ii) control by the defendant of the primary violator. Section 20(a) imposes the additional requirement that the plaintiff allege culpable participation.

Statute of Limitations

Section 13 of the Securities Act provides that no action for a violation of Section 11 may be maintained "unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence . . . In no event shall any such action be brought to enforce a liability . . . more than three years after the security was bona fide offered to the public." 15 U.S.C.A. § 77m (West 2006). Section 9(e) of the Exchange Act contains a similar limitation which applies to violations of Sections 10(b) and 20(a). 15 U.S.C. § 78i(e). Section 804 of the Sarbanes-Oxley Act of 2002 extended the statute of limitations for "a private right of action that involves a claim of fraud,

deceit, manipulation, or contrivance in contravention of a regulatory requirement concerning the securities laws." The new deadline, which is codified at 28 U.S.C. § 1658(b), is the earlier of (1) "2 years after the discovery of the facts constituting the violation" or (2) "5 years after such violation." 28 U.S.C. § 1658(b) (West, 2006).

Thus, as both parties acknowledge, the relevant statute of limitations for the fraud claims asserted under Sections 10(b) and 20(a) in this action is two years and the statute of limitations for Section 11 claims not sounding in fraud (as Plaintiffs acknowledge is the case here; see Pl. Opp. at 30 n. 37) is one year. The limitations period begins when a plaintiff has actual or inquiry notice of the facts underlying its potential claims. Plaintiffs will be deemed to have discovered fraud for statute of limitations purposes when a reasonable investor of ordinary intelligence would have discovered its existence. See Dodds v. Cigna Sec.'s, Inc., 12 F.3d 346, 350 (2d Cir. 1993).

This action was commenced on June 6, 2005. Defendant argues (and Plaintiffs do not appear to contest) that any claims premised on the alleged non-disclosure of the contract with the United States Postal Service, or premised on the non-disclosure of any performance metrics or language regarding termination contained within that contract, are time-barred, as the agreement itself (along with information regarding the metrics) was publicly filed on September 27, 2002, more than two years prior to the filing of the Complaint. The Court finds that the disclosures in Defendants' public filing, when viewed as a whole and even when construed in the light most favorable to Plaintiffs, were sufficient to put Plaintiffs on inquiry notice of the facts constituting the alleged fraud to the extent that claims are premised on non-disclosure of the contract with the United States Postal Service, or the non-disclosure of any performance metrics

or contractual language regarding termination. Thus, all such claims are time-barred and are dismissed with prejudice, as granting Plaintiffs' request for leave to replead them would be futile. See Foman v. Davis, 371 U.S. 178, 182 (1962) (holding that leave to replead should not be granted in certain situations, including when amendment would be futile).

Defendants also argue that Plaintiffs' claims regarding non-disclosure of the Patent Office's rejection of Defendants' patent applications (see Compl. ¶ 52) are time-barred. Plaintiffs did not respond to this argument in their opposition papers and did not address it at oral argument, and thus appear to concede this point. To the extent any of Plaintiffs' claims are premised on the Patent Office's rejection of Defendant's application for a patent, or non-disclosure of such rejection, those claims are time barred, as the rejections have been matters of public record since November 1, 2001, when the Patent Office's notices of non-final rejection of the applications became publicly available. In any event, Plaintiffs were placed on inquiry notice by Authentidate's September 27, 2002 Form 10-K, which warned that the Company had no patents, that there could be no assurance the patents would in fact be issued and that there was a possibility that patent infringement had occurred or might occur. Accordingly, claims regarding non-disclosure of the Patent Office's rejection of Defendants' patent applications are time-barred and are dismissed with prejudice. Again, granting leave to replead would be futile. The remaining patent-related claims, namely that Defendants stole patented technology from a competitor and submitted "half-hearted" patent applications in an attempt to mislead the public, will be discussed below.

Lack of Intent to Perform/ Rule 9(b)

Plaintiffs argue that the Defendants have mischaracterized Plaintiffs' case, and assert that one of the claims made in their Complaint is that Defendants failed to disclose that Authentidate never intended to be bound by the revenue metrics that were embodied in the Postal Service contract. However, the only portion of the Complaint Plaintiffs identified in their opposition papers and at oral argument as pleading this claim is a passage purporting to quote a single statement made by Defendant Botti during a November 4, 2004, Earnings Conference Call for analysts, investors and media representatives. During that call, Defendant Botti allegedly characterized the revenue metrics as "basically a guideline to say we would meet that [sic] something to measure whether we were going forward or not. So these metrics I think were basically agreed to between us as something to say, hey let's take another look at it and the post office is a very thorough, very large organization with a lot on its plate." (Compl. ¶ 165.)

Fed. R. Civ. P. 9(b) governs pleading in fraud actions and provides that, "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." (Emphasis added.) This particularity mandate requires that the plaintiff "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." Anatian v. Coutts Bank (Switzerland) Ltd., 193 F.3d 85, 88 (2d Cir. 1999) (internal quotation marks and citation omitted). Plaintiffs have failed to meet this heightened pleading standard with respect to their allegation that Authentidate never intended to be bound by the revenue metrics that were part of the Postal Service contract. Plaintiffs have failed to identify why Defendant Botti's statement is fraudulent; the one purported quotation is insufficient to

provide factual support for Plaintiffs' conclusory assertion that the Company never intended to be bound by the contract. However, as Plaintiffs have made a bare (albeit insufficient) allegation and have requested leave to replead dismissed claims, they will be given an opportunity to plead the claim properly. Rule 15 provides that leave to replead "shall be granted when justice so requires." Fed. R. Civ. P. 15(a). Although leave to amend is not automatic, a plaintiff generally is to be afforded an opportunity to test his claim on the merits if the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief. Foman v. Davis, 371 U.S. 178, 182 (1962). Thus, any claims premised on the allegation that the Company never intended to be bound by the revenue metrics that were part of the Postal Service contract are dismissed without prejudice, and Plaintiffs are granted leave to replead these claims.

Loss Causation

Plaintiffs allege that the market price of Authentidate stock declined when the "failure to obtain patent protection was revealed to the public." (Compl. ¶ 216.) Under Section 10(b), a plaintiff "must allege loss causation with sufficient particularity such that [a court] can determine whether the factual basis for its claim, if proven, could support an inference of proximate cause." First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 770 (2d Cir. 1994). Defendants argue that the Complaint fails to plead facts demonstrating a causal connection between Plaintiffs' alleged losses and any alleged omissions regarding the status of Authentidate's patent applications. Plaintiffs did not dispute this argument in their opposition papers or at oral argument. Because Plaintiffs have failed to allege loss causation regarding their patent-related claims, including their allegations that Defendants stole patent technology from a

competitor and submitted "half-hearted" patent applications in an attempt to mislead the public, with sufficient particularity to allow this Court to determine whether the factual basis for their claim, if proven, could support an inference of proximate cause, Plaintiffs' patent claims that are not time-barred are dismissed without prejudice and with leave to replead. See Foman, 371 U.S. at 182.

Non-Disclosure of Failure to Meet First Revenue Metrics

Plaintiffs allege throughout the Complaint and also in their opposition papers that the Defendants violated Section 10(b) and Rule 10(b)(5) because they knew for months, but failed to disclose, that the Company was in material breach, as of January 15, 2004, of the first revenue metric. However, under the terms of Authentidate's agreement with the Postal Service, which the Court may consider in its ruling on this motion as it was filed with the SEC, see Rothman v. Gregor, 220 F.3d 81, 88-89 (2d Cir. 2000) (citation omitted), the period for achieving the revenue metrics was extended until July 2004. The first written notice of noncompliance was not provided by the Postal Service to Authentidate until September of 2004, and the Company publicly and, it appears, timely announced its receipt of this notice on September 8, 2004. Thus, any claims premised on the argument that the Company failed to disclose that it was in breach of the first revenue metrics are dismissed without prejudice and with leave to replead. See Foman, 371 U.S. at 182.

Analysts' Statements

Plaintiffs claim (Complaint ¶¶ 107-111) that Defendants are liable for statements

by stock market analysts recommending Authentidate as a "strong buy" and describing the software as a "potential killer application." For corporate insiders to have liability under Section 10(b) for allegedly misleading statements that appeared in analyst reports, the plaintiff must plead facts demonstrating that the defendants "intentionally fostered a mistaken belief concerning a material fact that was incorporated into reports; or adopted or placed their imprimatur on the reports." Novaks v. Kasaks, 216 F.3d 300, 314 (2nd Cir. 2000) (citations and internal quotation marks omitted). Here, Plaintiffs fail to meet this burden. They merely assert in a conclusory fashion, without specific factual support, that a report by an analyst was based on Defendants' materially false and misleading statements and that Defendants' alleged misrepresentations were directly incorporated into the report and formed the basis for its high projections. Plaintiffs have failed to address this issue in their opposition papers, and their oral arguments concerning this matter at oral argument were insufficient to demonstrate that the claim should survive as plead. All claims based on analyst reports are dismissed without prejudice, and with leave to replead. See Foman, 371 U.S. at 182.

Remaining 10(b) Claim

Plaintiffs' only remaining Section 10(b) claim is that Defendants failed to update their public disclosures regarding a purported agreement in principle Authentidate had reached with the Postal Service to amend the Revenue Metrics. To state a Section 10(b) claim, a plaintiff must allege that a defendant "(1) made misstatements or omissions of material fact; (2) with scienter; (3) in connection with the purchase or sale of securities; (4) upon which plaintiffs relied; and (5) that plaintiffs' reliance was the proximate cause of their injury." Lentell, 396 F.3d

at 172 (citation omitted). Section 10(b) claims are subject to the heightened pleading standards of both Federal Rule of Civil Procedure 9(b), discussed above, and the PSLRA, which requires a plaintiff to plead facts that give rise to a "strong inference" that Defendants acted with scienter. See 15 U.S.C. § 78u-4(b)(2). "A plaintiff can establish this intent 'either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness.'" Acito v. IMCERA Group, Inc., 47 F.3d 47, 52 (2d Cir.1995) (internal citation omitted).

Plaintiffs allege that Defendants acted with the motive of keeping Authentidate's stock price at an artificial level to facilitate the Company's avoidance of insolvency through a February 2004 stock offering. They also allege that individual Defendants had the motive of engaging in lucrative insider trading. Plaintiffs' reliance on the stock offering as demonstrative of a motive for fraud in connection with the alleged failure to update is unavailing, as any connection between the February 2004 stock offering and failures to update a September 2004 statement are too attenuated to support a reasonable inference of scienter. Plaintiffs' invocation of insider-trading allegations is unavailing as to individual Defendants Pai, Waters, Smith, Luce, Johnson and Silverman, who are not alleged to have sold any stock during the class period. Finally, even as to those Defendants who are alleged to have sold stock during the class period, Plaintiffs have failed to satisfy Rule 9(b)'s heightened pleading standard in that they have not plead this claim with the requisite particularity, and have failed to satisfy the PSLRA's pleading standard as well.

Accordingly, any claims based on Defendants' failure to update the disclosures regarding an agreement in principle with the Postal Service to amend the revenue metrics are

dismissed without prejudice and with leave to replead. See Foman, 371 U.S. at 182.

Since the issue of pleading scienter based on knowing falsity, conscious misbehavior or recklessness has been raised in the briefs and the Court is granting leave to replead, it should be noted that the current Complaint does not sufficiently allege facts to support a finding of scienter based on the knowing falsity, or even conscious misbehavior or recklessness, of Defendants' statements or lack thereof with regard to the purported agreement with the Postal Service.

Section 11 Claims

Section 11 of the Securities Act imposes liability on an issuer of securities (and its directors and officers) when, in offering its shares to the public, a company fails to provide required information or includes misleading statements in its registration statements. Defendants argue that, because Plaintiffs do not and could not allege that they themselves purchased securities in the February 2004 offering, which was a private placement of unregistered securities, they lack standing to assert their Section 11 claim. Plaintiffs correctly note, however, that Section 11 of the Securities Act provides a cause of action to any plaintiff, including aftermarket purchasers, who can trace securities to a registration statement that contains a material misstament or omission. See DeMaria v. Andersen, 318 F.3d 170 (2d Cir. 2003). The named Plaintiffs argue that, although they "did not purchase shares in the [Public] Offering [made by those who had acquired shares in the private offering that was the subject of the contested registration statement], [they] have standing to pursue the Section 11 claim on behalf of those Class Members who did." (Pl. Opp. 31, n. 39.) The Complaint asserts, without

identifying the Class Members implicated and without any factual support, that "Class Members acquired Authentidate common stock traceable to the February 2004 Registration Statement." (Compl. ¶ 269.)

"In conducting the lawsuit on behalf of all class members and all those who have brought complaints that have been consolidated under their leadership, Lead Plaintiffs have a responsibility to <u>identify and include named plaintiffs</u> who have standing to represent the various potential subclasses of plaintiff who may be determined, at the class certification stage, to have distinct interests or claims." <u>In re Global Crossing, Ltd. Securities Litigation</u>, 313 F. Supp. 2d 189, 205 (S.D.N.Y. 2003) (emphasis added). Although for a Section 11 claim, plaintiffs are not "required to explain how their shares can be traced; general allegations that plaintiff purchased 'pursuant to' or traceable to false registration statement have been held sufficient to state a claim" (<u>id.</u> at 208), plaintiffs must at the very least identify named class members who do have standing to bring such claims. See <u>In re Initial Public Offering Securities Litigation</u>, 214 F.R.D. 117, 122 (S.D.N.Y. 2002) (holding that "[i]n order to maintain a class action, Plaintiffs must first establish that they have a valid claim with respect to the shares that they purchased. If the named plaintiffs have no cause of action in their own right, their complaint must be dismissed, even though the facts set forth in the complaint may show that others might have a valid claim"); <u>see also</u> <u>In re WorldCom, Inc. Securities Litigation</u>, 294 F. Supp. 2d 392, 422 (S.D.N.Y. 2003) (denying a motion to dismiss Section 11 claims in part because "[i]n filing the Complaint, [PSLRA] lead plaintiff fulfilled its obligation to assess the causes of action available to the class, to plead those claims in the consolidated amended complaint, <u>and to identify as named plaintiffs</u> any additional class representatives that were necessary to assert the claims." (emphasis added)).

Because Plaintiffs have not alleged that they themselves or other named Plaintiffs have standing to bring a Section 11 claim, the motion to dismiss is granted and the claim is dismissed without prejudice and with leave to replead.

Control Person Claims

Finally, Plaintiff asserts secondary liability against all of the individual Defendants as "control persons" under Section 20(a) (for the 10(b) claims) and against ten of the Defendants under Section 15 (for the Section 11 claim). To state a claim under Section 20(a) of the Exchange Act, 15 U.S.C. § 78(t)(a), and Section 15 of the Securities Act, 15 U.S.C. § 77o, a plaintiff must allege (i) a primary violation by a controlled person, and (ii) control by the defendant of the primary violator. Section 20(a) imposes the additional requirement that the plaintiff must allege culpable participation. In light of the fact that all of Plaintiffs' primary Section 10 (b) and Section 11 claims against Defendants have been dismissed, Plaintiffs' Section 20(a) and Section 15 control person claims are likewise dismissed without prejudice. To the extent Plaintiffs wish to replead control person claims in conjunction with the primary liability claims they have been granted leave to replead today, they may do so.

## CONCLUSION

For the foregoing reasons, Plaintiffs' claims premised on the non-disclosure of the contract with the United States Postal Service, Plaintiffs' claims premised on the non-disclosure of any performance metrics or language regarding termination contained within that contract, and Plaintiffs' claims regarding non-disclosure of the Patent Office's rejection of Defendants' patent applications are dismissed with prejudice. All of Plaintiffs' remaining claims are dismissed

without prejudice and with leave to replead.

Any further amended Complaint shall be filed and served within 21 days from the date of this Order. Any claims that are not timely replead will be dismissed with prejudice and without further advance notice to Plaintiffs.

SO ORDERED.

Dated: New York, New York
July 14, 2006

_____
LAURA TAYLOR SWAIN
United States District Judge